1
2
3
4
5
6
7
8      UNITED STATES DISTRICT COURT
9      SOUTHERN DISTRICT OF CALIFORNIA
10

11 | GUNAY MIRIYEVA,                          Case No.: 20-CV-2496 JLS (BGS)

12 |                              Plaintiff,   **ORDER (1) GRANTING**
                                              **DEFENDANTS' REQUEST FOR**
13 | v.                                       **JUDICIAL NOTICE AND (2)**
                                              **GRANTING IN PART AND**
14 | U.S. CITIZENSHIP AND                     **DENYING IN PART DEFENDANTS'**
     IMMIGRATION SERVICES;                    **MOTION TO DISMISS**
15 | KENNETH T. CUCCINELLI, Senior
     Official Performing the Duties of the
16 | Director of USCIS; and MAXIM             (ECF No. 12)
     MELISSA, San Diego Field Office
17 | Director, USCIS,
18
19 |                            Defendants.
20

21        Presently before the Court is Defendants U.S. Citizenship and Immigration Services

22 ("USCIS"), Kenneth T. Cuccinelli, and Maxim Melissa's (collectively, "Defendants")

23 Motion to Dismiss for Failure to State a Claim or Alternatively for Summary Judgment

24 ("Mot.," ECF No. 12) as well as Defendants' Request for Judicial Notice in support of the

25 same.  Plaintiff Gunay Miriyeva filed an Opposition to the Motion ("Opp'n," ECF No. 17),

26 and Defendants filed a Reply in support of the Motion ("Reply," ECF No. 18).  The Court

27 decides the matter on the papers submitted and without oral argument pursuant to Civil

28 Local Rule 7.1(d)(1).  *See generally* ECF No. 19.  The Court does not convert Defendants'

Motion to a motion for summary judgment, but instead decides the Motion to Dismiss based on the Request for Judicial Notice, Plaintiff's Complaint ("Compl.," ECF No. 1), and the documents incorporated by reference into the Complaint. Having carefully reviewed the Complaint, the Parties' arguments, and the relevant law, the Court **GRANTS** Defendants' Request for Judicial Notice and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss, as follows.

## BACKGROUND[1]

Plaintiff, an Azerbaijan citizen, came to the United States on an F-1 student visa as a graduate student in August 2013. Compl. ¶ 47. In general, enlistees in the United States Armed Forces must be either United States citizens or lawful permanent residents. 10 U.S.C. § 504(b). However, Plaintiff enlisted in the Army's Selected Reserve of the Ready Reserve on March 14, 2016, through the Military Accessions Vital to the National Interest ("MAVNI") program. Compl. ¶¶ 48–49, 51. For foreign nationals with critical foreign language skills or specialized medical training, the MAVNI program provides a path to citizenship for service in the military during designated periods of hostility.[2] 10 U.S.C. § 504(b)(2). The Army assigned Plaintiff to the Selected Reserve's Delayed Training Program ("DTP"). Compl. ¶ 52.

In March 2018, while awaiting a favorable Military Service Suitability Determination ("MSSD") and completion of background investigations to begin active-duty service, Plaintiff applied for naturalization pursuant to 8 U.S.C. § 1440. *Id.* ¶ 55. Plaintiff's application included Form N-426, which is titled Request for Certification of Military or Naval Service. *Id.* ¶¶ 53, 95; *see also* Ex. 1, ECF No. 1-2. On January 18,

---

[1] The facts alleged in Plaintiff's Complaint are accepted as true for purposes of the present Motion. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] A designated period of hostility has existed since September 11, 2001, and has been in effect at all times relevant to this action. *See* Exec. Order No. 13269, 67 Fed. Reg. 45,287 (July 3, 2002); *see also* Compl. ¶ 48 n.2; Mot. at 5 n.1.

2

2018, the Army certified Plaintiff's Form N-426, indicating that Plaintiff "is currently serving honorably" in the Army and that Plaintiff was not separated from military service. Compl. ¶ 53; *see also* Ex. 1.  Plaintiff's naturalization application was initially approved on October 4, 2018; however, the USCIS did not administer the oath of citizenship at that time.  Compl. ¶¶ 55–56.  Plaintiff entered active-duty status on November 5, 2018, when she began her basic training. *Id.* ¶ 60.  Plaintiff was discharged from the Army for medical reasons on December 21, 2018, and the Army issued her a DD Form 214, Certificate of Release or Discharge from Active Duty ("DD-214"). *Id.*  Plaintiff served fewer than 180 days of "active" duty, and as a result she received an "entry-level" or "uncharacterized" discharge on her DD-214. *Id.* ¶¶ 61–62.

The Army subsequently certified a second Form N-426 for Plaintiff on January 11, 2019, which indicated that Plaintiff "is currently serving honorably" and represented that she was not separated from service.[3] *Id.* ¶ 73; Ex. 4, ECF No. 1-5.  On April 23, 2019, the Army certified a third Form N-426 to USCIS, which provided that Plaintiff separated from service on December 21, 2018, and that she served honorably for her period of military service; however, the certifying officer left the "discharge type" question blank.  Compl. ¶ 77; Ex. 6, ECF No. 1-7.  On June 6, 2019, USCIS notified Plaintiff of its intent to reopen Plaintiff's application for naturalization, and USCIS simultaneously revoked its prior approval of her naturalization application on the grounds that an "uncharacterized" discharge is not a separation "under honorable conditions" as required under 8 U.S.C. § 1440.  Compl. ¶ 81; Ex. 7, ECF No. 1-8.  On July 11, 2019, USCIS denied Plaintiff's naturalization application after finding "there is no indication that the Army determined [Plaintiff's] separation was 'under honorable conditions.'"  Compl. ¶ 84; Ex. 8, ECF No. 1-9.

---

[3] Plaintiff alleges she was discharged from the Army at this time.  Compl. ¶ 73 n.5.  To explain this discrepancy, Plaintiff theorizes that Army records did not yet reflect her discharge when the Army issued this certification.  *Id.*  Plaintiff does not dispute that she is discharged from the Army or the characterization of discharge on her DD-214 as "uncharacterized." *Id.*

Beginning in May 2017, while Plaintiff was serving in the Army's Selected Reserve and adjudicating her naturalization application, four cases were filed in federal court involving immigrants who enlisted in the Unites States military as part of the MAVNI program and sought naturalization under 8 U.S.C. § 1440. *See Nia v. DHS*, No. 17-cv-0998 (PLF) (D.D.C.); *Kirwa v. Dep't of Defense*, No. 17-cv-01793 (PLF) (D.D.C.); *Calixto v. Dep't of the Army*, 18-cv-01551 (PLF) (D.D.C.); *Miriyeva v. USCIS*, No. 19-cv-3351 (ESH) (D.D.C.). These cases raise challenges to certain USCIS, Department of Defense ("DoD"), and Army policies pertaining to MAVNI naturalizations and purported discharge actions. Compl. ¶ 73 n.4. In *Calixto*, the Army included Plaintiff on a list of MAVNI soldiers whose discharges from the Army were not properly effectuated. *See id.* ¶¶ 85–86. Based the Army's inclusion of Plaintiff on the *Calixto* list, USCIS again reopened Plaintiff's naturalization application on July 11, 2019. *See id.* Because the Army reported that Plaintiff had not been separated, USCIS could not deny her naturalization application based on "separation from military service without honorable discharge." *Id.* Based on this information, USCIS approved Plaintiff's naturalization application for the second time. *Id.* ¶ 88. USCIS subsequently submitted a status report in *Nio* indicating that Plaintiff was erroneously included on the *Calixto* list because her DD-214 indicated a final discharge. *Id.* ¶ 89. After this correction, USCIS again denied Plaintiff's application. *Id.* ¶ 92(j).

On August 16, 2019, Plaintiff appealed USCIS's denial of her naturalization application, submitting a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. Compl. ¶ 94; Ex. 11, ECF No. 1-12. On September 2, 2020, the Army provided Plaintiff with a fourth Form N-426. Compl. ¶¶ 94, 98; Ex. 9, ECF No. 1-10. The fourth Form N-426 has additional instructions under the "Character of Service" section that the other Form N-426s did not include. *Compare* Ex. 9 at 4, *with* Ex. 6 at 3. This version of the form further required Plaintiff to "provide copies of [her] DD Form 214 or NGB Form 22 that include the character of service upon separation from service[.]" Ex. 9 at 4. The "Characterization of Service" section of the fourth Form N-426 indicated that Plaintiff "served honorably," and under "Separation Information" indicated that Plaintiff

is separated and classified her "discharge type" as "Honorable" out of two options, "Honorable" or "Other." *Id.*

On November 24, 2020, USCIS reaffirmed its decision to deny Plaintiff's naturalization application.  Compl. ¶ 101; Ex. 11, ECF No. 1-12.  USCIS stated that because Plaintiff's DD-214 "reflects [she] received an 'uncharacterized' discharge from the U.S. Armed Forces . . . [she has] not met [her] burden to prove by a preponderance of the evidence that [she] meet[s] all the requirements for naturalization, namely the requirement of separation under honorable conditions."  Ex. 11 at 2.  USCIS found Plaintiff's fourth certified Form N-426 "[did] not overcome the 'uncharacterized' designation on [Plaintiff's] DD 214 because DoD, per [DoD Instruction ("DoDI")] 1336.01, treats the DD 214 as 'the authoritative source of information required for the administration of State and Federal laws applicable to personnel who have been discharged . . . while on active duty.'"  Compl. ¶ 101; Ex. 11.

On December 23, 2020, Plaintiff filed this action under 8 U.S.C. § 1421(c) seeking judicial review of USCIS's determination that she is ineligible to naturalize based on her "uncharacterized" discharge.  Plaintiff named the USCIS; Ken Cuccinelli, the Senior Official Performing the Duties of Director of USCIS; and Melissa Maxim, San Diego Field Office Director of USCIS, as defendants.  Compl. ¶¶ 33–35.  Plaintiff's Complaint alleges that USCIS has a policy of treating a "character of service" designation of "uncharacterized" on an applicant's DD-214 as an absolute bar to military naturalization contrary to federal law (the "Policy"), and that USCIS incorrectly denied her naturalization application on this basis.  *Id.* ¶¶ 3–4, 19.  Plaintiff's Complaint asserts six claims: (1) Count I seeks judicial review of USCIS's determination under 8 U.S.C. § 1421(c); (2) Count II asserts violations of the Administrative Procedure Act ("APA"); (3) Count III seeks equitable estoppel; (4) Count IV alleges Constitutional violations under the Uniform Rule of Naturalization and the Due Process Clause of the Fifth Amendment; (5) Count V seeks a declaratory judgment; and (6) Count VI seeks injunctive relief.

///

**REQUEST FOR JUDICIAL NOTICE**

As an initial matter, Defendants request that the Court take judicial notice of six exhibits: (A) the district court's July 31, 2019 order in *Calixto*; (B) the Army's August 7, 2019 status report in *Calixto*; (C) USCIS's September 18, 2019 status report in *Nio*; (D) the transcript of the September 23, 2019 status conference in *Nio*; (E) USCIS's November 20, 2019 Motion to Reopen Plaintiff's naturalization application; and (F) USCIS's February 20, 2020 decision to deny Plaintiff's application for naturalization. *See* Mot. at 7–9. Alternatively, to the extent that the Court finds that these documents cannot be judicially noticed, Defendants request that the Court convert Defendants' motion to dismiss into a motion for summary judgment. *Id.* at 9. Plaintiff does not oppose Defendants' request for judicial notice. *See generally* Opp'n.

As a general rule, a district court cannot rely on evidence outside the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into a Rule 56 motion for summary judgment. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore *et al.*, Moore's Federal Practice § 12.34[2] (3d ed. 1999)). Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." "Judicially noticed facts often consist of matters of public record, such as prior court proceedings . . . or other court documents." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (citation omitted); *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (The court "may take judicial notice of court filings and other

matters of public record.").  While "[a] court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not take notice of "the truth of the facts cited therein."  *Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006).  Additionally, "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'"  *Ritchie*, 342 F.3d at 909 (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

Plaintiff refers to the proceedings in *Calixto* and *Nio* throughout her Complaint. Compl. ¶¶ 73 n.5, 86, 89–91, 109.  The Court therefore takes judicial notice of Exhibits A through D as matters of public record in court proceedings, but not the truth of the facts cited therein.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (stating a federal court may take judicial notice of "documents on file in federal or state courts").  The Court also takes judicial notice of Exhibits E and F as records of USCIS, which is an administrative body.  *See Ritchie*, 342 F.3d at 909.  Accordingly, the Court **GRANTS** Defendants' Request for Judicial Notice.  As the Court has granted Defendants' request for judicial notice, the Court therefore declines to construe the present Motion as a motion for summary judgment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys.*, *Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Defendants argue that the Court should dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted.  Mot. at 1.  First, Defendants argue that Count I of Plaintiff's Complaint fails to allege sufficient plausible facts showing that Plaintiff is entitled to naturalization pursuant to 8 U.S.C. § 1440.  Second, Defendants argue that the Court should dismiss Counts II, IV, V, and VI of Plaintiff's Complaint because issue preclusion bars the claims, as Plaintiff has already raised these issues and obtained a

1    decision in *Miriyeva v. U.S. Citizenship & Immigration Servs.*, 436 F. Supp. 3d 170

2    (D.D.C. 2019) ("*Miriyeva I*"), or alternatively that these claims fail as a matter of law.

3    Next, Defendants argue that Plaintiff's equitable estoppel claim in Count III fails because

4    Plaintiff did not meet the statutory criteria for military naturalization.  Finally, Defendants

5    argue that because Plaintiff's substantive claims fail, the Court should also dismiss

6    Plaintiff's claims under the Declaratory Judgment Act and for injunctive relief in Counts

7    V and VI.  The Court will examine the sufficiency of each of Plaintiff's claims in turn.

8    **I.   Review of Naturalization Application**

9    In Count I of Plaintiff's Complaint, Plaintiff seeks de novo judicial review of her

10   naturalization application pursuant to 8 U.S.C. § 1421(c).  Compl. ¶¶ 177–79.  Defendants

11   argue the Court should dismiss this claim because Plaintiff does not allege sufficient

12   plausible facts showing that she is entitled to naturalization.  Mot. at 10.  In response,

13   Plaintiff argues that the Army has certified Plaintiff's service and separation were

14   honorable, and therefore she qualifies for naturalization under § 1440.  Opp'n at 11.

15   "[S]ole authority to naturalize persons as citizens of the United States" is vested with

16   the Attorney General.  *See* 8 U.S.C. § 1421(a).  USCIS is the agency designated to make

17   naturalization decisions with respect to applicants pursuing naturalization under 8 U.S.C.

18   § 1440.  *See id.*  However, in certain circumstances, district courts have limited jurisdiction

19   over the naturalization process.  *See, e.g.*, *id.* § 1421(b)(1) (district court may administer

20   the oath of allegiance); *id.* § 1421(c) (district court may conduct a de novo review of

21   naturalization applications that have been denied).  An applicant seeking judicial review of

22   the denial of a naturalization application must first request a hearing before an immigration

23   officer.  *Id.* § 1447(a).  Only if the agency denial is upheld after the hearing may an

24   applicant seek review in the appropriate district court.  *Id.* § 1421(c).

25   Here, the Parties do not dispute that Plaintiff requested and attended an

26   administrative hearing before an immigration officer pursuant to 8 C.F.R. 336.2(b) and that

27   the immigration officer upheld USCIS's denial of her application.  *See* Compl. ¶ 94; Ex.

28   11; Mot. at 3.  Therefore, Plaintiff has properly exhausted administrative remedies and

9

satisfied the procedural requirements to seek judicial review pursuant to 8 U.S.C. § 1421(c).

Section 1421(c) provides that the district court's review of a naturalization application "shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). "The applicant shall bear the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); *see also Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 637 (1967). "No alien has the slightest right to naturalization unless all statutory requirements are complied with," *United States v. Ginsberg*, 243 U.S. 472, 474–75 (1917), and "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship," *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).

Therefore, the Court must determine whether Plaintiff has alleged sufficient plausible facts to state a claim for naturalization. Plaintiff sought naturalization pursuant to § 329 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1440, which provides an expedited path to citizenship based on service in the United States Armed Forces during certain periods of military hostilities. In relevant part, § 1440(a) states:

> Any person who, while an alien or a noncitizen national of the United States, *has served honorably* as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States [during a designated period of hostilities], and who, if separated from such service, *was separated under honorable conditions*, may be naturalized as provided in this section[.]

8 U.S.C. § 1440(a) (emphases added). An applicant under this section must prove "by a duly authenticated certification from the executive department under which the applicant served or is serving" that "the applicant served honorably in an active-duty status . . . and was separated from such service under honorable conditions[.]" *Id.* § 1440(b)(3). Whether Plaintiff has satisfied her burden of demonstrating her eligibility for naturalized citizenship

is not an issue presently before the Court.  Instead, on a motion to dismiss, the dispositive issue here is whether Plaintiff has alleged plausible facts that she satisfies the prerequisites to naturalization pursuant to 8 U.S.C. § 1440 that she "served honorably" and "was separated under honorable conditions" from the Army.

Defendants first argue that the plain language of § 1440(a) requires a separation "under honorable conditions." Mot. at 11. Defendants argue that the DD-214 is the "duly authenticated certification from the executive department" that determines Plaintiff's separation from service was "uncharacterized," and therefore she cannot meet the requirement of separation "under honorable conditions" to qualify for naturalization. *See* Mot. at 11–12.  However, Defendants admit that Plaintiff's DD-214 and Form N-426s provide "conflicting information regarding Plaintiff's discharge characterization type." Mot. at 16.  It is not clear based on the pleadings alone that Plaintiff was not separated "under honorable conditions."

The Parties do not dispute that Plaintiff served honorably in the Army's Selected Reserve of the Ready Reserve, or that she received an "uncharacterized" discharge on her DD-214 after she was discharged from the Army for medical reasons with fewer than 180 days of active-duty service.  However, Plaintiff relies on her multiple Form N-426s to argue that the Army, which is the executive department under which she served, provided a duly authenticated certification that she "served honorably" and "was separated under honorable conditions."  Opp'n at 9–10.  In particular, in Plaintiff's fourth Form N-426, the Army certified both that Plaintiff "served honorably" and classified Plaintiff's "discharge type" as "Honorable."  Ex. 9 at 4.  Plaintiff claims that the Form N-426 was created for the specific purpose of obtaining the certification required for military naturalization.  Compl. ¶ 15.  Defendants agree with this characterization of the Form N-426; however, Defendants argue the Form N-426 "is not the only means by which the military provides that certification." Mot. at 17 n.5.  Defendants argue that "USCIS requires a DD 214 from all applicants who have separated from service, but does not require a certified Form N-426 from such applicants." *Id.*

Defendants rely on *Kulkarni v. Wolf*, 503 F. Supp. 3d 908 (W.D. Mo. 2020), and *Oyebade v. Lee*, No. 1:09-CV-01054-LJM, 2010 WL 2927207 (S.D. Ind. July 21, 2010), to support their argument that an "uncharacterized" character of service on an applicant's DD-214 does not satisfy § 1440's requirement that separation be "under honorable conditions." *Kulkarni* and *Oyebade* are analogous to the present case only insofar as the plaintiffs were found unqualified to serve in the military due to medical conditions detected while at basic training, and their DD-214s designated their discharges from the military as "uncharacterized." *Kulkarni*, 503 F. Supp. 3d at 912; *Oyebade*, 2010 WL 2927207, at *1. However, unlike the present case, the plaintiff in *Kulkarni* received a Form N-426 in which the Army certified her separation type as "other," and the accompanying remarks stated "Soldier discharged with an uncharacterized discharge.  No derogatory information found." *Kulkarni*, 503 F. Supp. 3d at 912.  In *Oyebade*, the plaintiff apparently did not receive a Form N-426 and only relied on his DD-214 when he submitted his naturalization application. *See Oyebade*, 2010 WL 2927207, at *4.  The present case is distinguishable from *Kulkarni* and *Oyebade* because Plaintiff received a Form N-426 from the Army that certified Plaintiff "served honorably" and classified Plaintiff's "discharge type" as "Honorable."  Ex. 9 at 4.  Therefore, Plaintiff has pleaded sufficient facts that she meets the statutory requirements of § 1440(a) for naturalization.

Defendants argue that the DD-214 is "the controlling document that demonstrates characterization of service."  Reply at 2–3 (citing DoDI 1336.04).  However, § 1440 does not specify the form the "duly authenticated certification" must take.   Defendants' arguments regarding the weight the Court should assign the Form N-426 and the DD-214 are better suited to when the Court conducts its de novo review of Plaintiff's naturalization application.  At this stage, Plaintiff has alleged sufficient facts to state a plausible claim for naturalization pursuant to 8 U.S.C. § 1440.

The Complaint plausibly alleges that the Army certified Plaintiff served honorably and her separation from service was under honorable conditions. *Iqbal*, 556 U.S. at 678. Based on the facts alleged and the documents incorporated by reference into Plaintiff's

Complaint, Plaintiff has plausibly alleged that she meets the prerequisites for naturalization under § 1440.  Accordingly, the Court **DENIES** Defendants' Motion as to Count I.

## II.   Administrative Procedure Act

In Count II of her Complaint, Plaintiff alleges that USCIS's Policy violates the APA because it is "contrary to law, arbitrary and capricious, and reflects USCIS acting out outside of its statutory authority."  Compl. ¶¶ 180–96.  Plaintiff claims that the Policy (1) "improperly ignores the Army's express certification of service on Form N-426"; (2) "ignor[es] Congress' language and intent, which is that anything other than an 'other than honorable' discharge qualifies a veteran for naturalization"; (3) ignores "military regulations, including DoDI 1332.14, [which] state that an 'uncharacterized' discharge in these circumstances is, and must be treated as, a discharge 'under honorable conditions'"; and (4) "ignores the fact that [Plaintiff]'s active duty discharge must be considered honorable under 10 U.S.C. § 12685 and DoDI 1332.14 Enclosure 4, Subsection 3.c.(l)(d) because she did not receive a discharge under 'other than honorable conditions' through a court-martial, board of officers proceeding, or by consent."  *Id.* ¶¶ 183–86.  Plaintiff claims that the Policy is "a new substantive legal requirement that is subject to the notice and comment requirements of 5 U.S.C. § 553 prior to implementation."  *Id.* ¶ 192.  Plaintiff alleges that "the Policy creates a minimum period of service requirement (i.e., more than 180 days of active duty service) that Congress did not intend and which Congress did not give Defendants discretion to create."  *Id.* ¶ 189.  Defendants argue Plaintiff's APA claim fails because the claim is barred by issue preclusion and alternatively fails as a matter of law.  The Court will address these arguments in turn.

### A.   *Issue Preclusion*

Defendants argue that the Court should dismiss Count II of Plaintiff's Complaint, in addition to Counts IV, V, and VI, because these claims are barred by issue preclusion.  Mot. at 19.  Defendants contend that Plaintiff has already raised and obtained a decision on these claims in *Miriyeva I*.  *Id.*  In response, Plaintiff argues that these claims are not barred by

///

issue preclusion because the district court in *Miriyeva I* did not address the merits of the claims.  Opp'n at 33.

Issue preclusion, also known as collateral estoppel, "bars the relitigation of issues actually adjudicated in previous litigation."  *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992).  For issue preclusion to apply, four elements must be satisfied: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), as amended (May 3, 2012)).  "[C]ourts often look to the record of the prior proceeding to determine whether an issue was in fact raised, contested, and submitted for determination."  *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc.*, 411 F. Supp. 3d 905, 921 (N.D. Cal. 2019).  The burden is on party seeking to rely upon issue preclusion to prove each element.  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050–51 (9th Cir. 2008).

Here, the Court finds that Defendants' argument fails on the second element.  As to the first element, the plaintiffs in *Miriyeva I* raised the same issues as Plaintiff's present Complaint that USCIS's Policy violated the Administrative Procedure Act, the Constitution's Uniform Rule of Naturalization clause, and the Due Process Clause of the Fifth Amendment, and the plaintiffs sought declaratory and injunctive relief.  *Compare Miriyeva*, 436 F. Supp. 3d at 177, *with* Compl. ¶¶ 180–95, 200–22.  However, these issues were not actually litigated and decided in *Miriyeva I*.  The *Miriyeva I* court dismissed the plaintiffs' claims for lack of subject matter jurisdiction at the motion to dismiss phase.  *Miriyeva*, 436 F. Supp. 3d at 177; *see also Janjua*, 933 F.3d at 1066 ("[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination." (citing Restatement (Second) of Judgments § 27, cmt. (d) (1982))).  In fact, the *Miriyeva I* court expressly found that "plaintiffs will be able raise these same arguments under § 1421(c), including their constitutional claims, as they are raising here," when they bring claims for

14

judicial review of their naturalization applications in their own districts.  *Miriyeva*, 436 F. Supp. 3d at 184.   Plaintiff has raised these issues in conjunction with her § 1421(c) naturalization claims in the district where she resides.

Therefore, Defendants' argument that Counts II, IV, V, and VI of Plaintiff's Complaint are barred by issue preclusion is without merit, and the Court **DENIES** the Motion on this basis.

### B.    Failure to State a Claim

#### 1.    Arbitrary and Capricious

Defendants argue that Plaintiff has not alleged sufficient plausible facts showing that the Policy is arbitrary or capricious.  Mot. at 21.  Defendants contend that the Complaint fails to establish "that USCIS's deference to the Army's discharge characterization and certification on Plaintiff's DD 214 were a 'clear error of judgment.'"  Mot. at 21–22 (citations omitted).  In response, Plaintiff argues that, "without the administrative record, or discovery, it is also impossible at this preliminary stage to determine what factors USCIS did and did not consider in formulating its unpublished Policy, or what evidence was before the agency."  Opp'n at 34–35.

Under the APA, a court must "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law."  5 U.S.C. § 706(2).   Review under the "arbitrary and capricious standard is narrow[.]"  *Bowman Transp. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 285–86 (1974).  Despite this narrow scope of review, however, a court's inquiry must be "searching and careful."  *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989).  "An agency must 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  *Gill v. United States Dep't of Justice*, 913 F.3d 1179, 1187 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  A decision is arbitrary and capricious only if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to

consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1521 (9th Cir. 1995) (quoting *Beno v. Shalala*, 30 F.3d 1057, 1073 (9th Cir. 1994)).   The basis for the agency's decision must come from the administrative record.   *Gill*, 913 F.3d at 1187.   In APA cases the administrative record is "the whole record," which "consists of all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989); *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision.").

Here, USCIS is the administrative agency that is designated to make the naturalization decision at issue.   Another court analyzing a similar claim found that "USCIS's reading of the plain text of § 1440 and application of the Army's discharge characterization and certification were not a 'clear error of judgment.'"   *Kulkarni*, 503 F. Supp. 3d at 920 (quoting *Marsh*, 490 U.S. at 378).   However, this case is distinguishable from *Kulkarni*.   As the Court has already found, Plaintiff has plausibly alleged that she proved by a duly authenticated certification from the Army that she "served honorably" and "was separated under honorable conditions."   *See supra* Section I.   These are the statutory prerequisites for naturalization pursuant to § 1440, but USCIS denied Plaintiff's application.   The complete administrative record is not presently before the Court; therefore, it is impossible to say at this stage in the proceedings what was before USCIS when it decided to deny Plaintiff's application.   USCIS must articulate a satisfactory explanation based on the facts for denying Plaintiff's application when she has plausibly alleged that she met the statutory requirements for naturalization.   *Gill*, 913 F.3d at 1187.

Based Plaintiff's Complaint and the documents incorporated by reference therein, Plaintiff has stated a plausible claim that the Policy is arbitrary and capricious in violation of the APA.   *See Vasquez*, 487 F.3d at 1249 ("In reviewing such a motion, we accept all

material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party.").   Accordingly, the Court **DENIES** Defendants' Motion on this basis.

### 2.   Notice and Comment

Next, Defendants argue that "Plaintiff's Complaint does not plausibly allege that USCIS's application of § 1440 is a 'new substantive requirement,' nor does the Complaint plausibly allege that USCIS's application of § 1440 violates the APA's notice-and-comment rulemaking regulations." Mot. at 22.   In response, Plaintiff argues that "USCIS could not possibly have provided adequate public notice of an unpublished Policy, which alone is problematic, even if the Policy was not considered unlawful in other ways." Opp'n at 35.

"In enacting the APA, Congress made a judgment that notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested persons notice and an opportunity to comment." *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *see also Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1485 (9th Cir. 1992) ("[T]he notice and comment requirements . . . are designed to ensure public participation in rulemaking.").   Under the APA, agency action that represents a legislative rule must undergo notice and comment procedures, but this is not the case for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96–97 (2015).   A legislative rule is one that has the force of law and creates new rights or duties, while an interpretive rule merely clarifies an existing rule and does not change law, policy, or practice. *See Perez*, 575 U.S. at 96–97.   An agency can forgo the notice and comment procedure for a legislative rule only if the agency "publishes a specific finding of good cause documenting why such procedures 'are impracticable, unnecessary, or contrary to the public interest.'" *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) (quoting 5 U.S.C. § 553(b), (b)(B)).   In contrast, interpretive rules and rules of agency organization, procedure, or practice do not add to the substantive law that

already exists in the form of a statute or legislative rule. *Id.* at 1087. The court need not accept the agency's characterization of its rule as legislative or interpretive at face value. *Gunderson v. Hood*, 268 F.3d 1149, 1154 n.27 (9th Cir. 2001).

Plaintiff has alleged that Defendants' "Policy creates a minimum period of service requirement (i.e., more than 180 days of active duty service)" to qualify for military naturalization. Compl. ¶ 189. There is no minimum period of service requirement in § 1440, only the requirement that the applicant "served honorably" and, if separated, "was separated under honorable conditions." 8 U.S.C. § 1440(a). Plaintiff alleges that a reservist who is discharged with less than 180 days of active-duty service generally receives an "uncharacterized" discharge on his or her DD-214. Compl. ¶ 146. It is plausible based on the facts alleged that Defendants have created substantive requirements outside the statutory rule for military naturalization. Therefore, the Court **DENIES** Defendants' Motion on this basis.

### 3. Publication

Defendants argue that USCIS has not changed or added any requirement for Plaintiff to be naturalized pursuant to § 1440, and therefore Plaintiff has not plausibly alleged that she was "adversely affected" by an unpublished rule or regulation that should have been published. Mot. at 23–24.

Defendants are required to publish in the Federal Register all "rules of procedure" and "statements of general policy or interpretations of general applicability formulated and adopted by the agency." 5 U.S.C. § 552. When an agency issues a rule, the APA requires the following procedure "(1) publishing notice of the proposed rule-making in the Federal Register; (2) providing a period for interested persons to comment on the proposed rule, which comments will be considered by the agency prior to adopting the rule; and (3) publishing the adopted rule not less than thirty days before its effective date, with certain exceptions[.]" *Paulsen v. Daniels*, 413 F.3d 999, 1004 (9th Cir. 2005) (citing 5 U.S.C. § 553(b), (c), (d)). "If notice of a proposed rule is not published in the Federal Register at least thirty days prior to its issuance, or if good cause is not found and published for the

immediate issuance of a rule, the rule cannot be legally issued[.]"  *Hotch v. United States*, 212 F.2d 280, 284 (9th Cir. 1954) (footnote omitted).

The Court has already found that Plaintiff plausibly alleged that Defendants' Policy constituted a rule subject to the notice and comment procedure.  Plaintiff has additionally alleged that Defendants failed to publish the Policy prior to its issuance, and therefore has stated a plausible claim for violation of the APA.  Accordingly, the Court **DENIES** Defendants' Motion as to Count II of Plaintiff's Complaint.

## III.   Equitable Estoppel

In Count III of her Complaint, Plaintiff claims that she is entitled to be naturalized under the equitable estoppel doctrine because of USCIS's "repeated failure to conduct an oath ceremony" after Plaintiff's naturalization application was approved.  Compl. ¶ 198. Defendants argue that this claim should be dismissed because Plaintiff "does not meet the statutory requirements for citizenship," and therefore "a court does not have authority to confer citizenship through equitable means."  Mot. at 18 (citing *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988)).  Alternatively, Defendants argue that Plaintiff fails to satisfy the requirements of the equitable estoppel doctrine.  *Id.*  As the Court has already found that Plaintiff has plausibly alleged that she meets the statutory requirements for citizenship, *see supra* Section I, the Court will examine only whether Plaintiff has adequately stated a claim that Defendants should be estopped from withdrawing the October 4, 2018, approval of Plaintiff's naturalization application.

In the Ninth Circuit, a plaintiff must plead the following elements to state a claim for equitable estoppel: "(1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance."  *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (quoting *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir. 1991)).  When equitable estoppel is sought against the government, the plaintiff must additionally plead that the government engaged in "affirmative misconduct going beyond mere negligence."  *Mukherjee v. INS*, 793 F.2d 1006, 1008–09 (9th Cir.

1986).   Affirmative misconduct is defined as "a deliberate lie or a pattern of false promises."  *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc). "Furthermore, estoppel will apply only where the government's wrongful act will cause a serious injustice and the public's interest will not suffer undue damage by the imposition of liability."  *Mukherjee*, 793 F.2d at 1008–09 (quoting *Morgan v. Heckler*, 779 F.2d 544, 545 (9th Cir. 1985)).

Plaintiff claims that USCIS regularly administers a same-day oath of citizenship to applicants who have been approved for citizenship and that the MAVNI program promised an expedited naturalization process.  Compl. ¶¶ 49, 55.  Plaintiff argues the failure to promptly administer her oath when her application was approved amounts to an affirmative, willful, and bad faith refusal to complete Plaintiff's naturalization process. Opp'n at 29.  The Court finds that the failure to schedule Plaintiff's oath ceremony in the two and half months following her application's approval does not, in itself, constitute affirmative misconduct warranting equitable estoppel relief.  *Jaa v. U.S. I.N.S.*, 779 F.2d 569, 572 (9th Cir. 1986) ("Mere unexplained delay does not show misconduct." (citing *INS v. Miranda*, 459 U.S. 14, 18–19 (1982)).  However, Plaintiff alleges a scheme "whereby USCIS intentionally disregarded its statutory duty to process MAVNI naturalization applications pending advice from DoD regarding whether the applicant had received a favorable MSSD."  Opp'n at 30 (citing *Nio*, 385 F. Supp. 3d at 67–68).  Plaintiff contends that Defendants "delay[ed] the processing of naturalization applications so it can wait to see if an applicant becomes disqualified."  Opp'n at 31 (quoting *Nio*, 385 F. Supp. 3d at 67–68).  At the pleading stage, Plaintiff has sufficiently alleged affirmative misconduct going beyond mere negligence such that her claim for equitable estoppel survives a motion to dismiss.  Accordingly, the Court **DENIES** Defendants' Motion as to Count III of Plaintiff's Complaint.

## IV.   Constitutional Claims

In Count IV, Plaintiff alleges that USCIS's Policy violates the Constitution's Uniform Rule of Naturalization clause and the Fifth Amendment's Due Process Clause.

*See generally* Compl. ¶¶ 200–11.  Plaintiff alleges that USCIS's Policy creates a minimum period of service and physical requirements for military naturalization under § 1440 and allows USCIS, not the military, to determine whether soldiers meet the criteria for honorable discharge.  Compl. ¶¶ 201–06, 208–09.  Plaintiff also alleges that USCIS treated Plaintiff's discharge as "other than honorable" without providing Plaintiff with the process that accompanies such discharge according to the DoD Instructions, violating Plaintiff's Fifth Amendment right to due process.  *Id.* ¶ 207.  As the Court has already determined that Defendants' issue preclusion argument fails as to Count IV, *see supra* Section II.A, the Court will examine whether Plaintiff has stated a claim for violation of the Uniform Rule of Naturalization and the Fifth Amendment's Due Process Clause.

### A.    *Uniform Rule of Naturalization*

Defendants argue Plaintiff's claim under the Uniform Rule of Naturalization fails to state a claim because USCIS's determination that an "uncharacterized" discharge does not satisfy § 1440 falls within its broad authority to administer the provisions of the INA.  Mot. at 24.

The federal government has broad and plenary powers over the subject of immigration and the status of aliens.  *Arizona v. United States*, 567 U.S. 387, 394 (2012).  The Constitution empowers Congress to "establish an uniform Rule of Naturalization."  U.S. Const. art. I, § 8, cl. 4; *see also Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 16 (2015).  Once Congress "establishes such uniform rule [of naturalization], those who come within its provisions are entitled to the benefit thereof as a matter of right[.]"  *Schwab v. Coleman*, 145 F.2d 672, 676 (4th Cir. 1944).

Plaintiff has alleged that USCIS unlawfully implemented a Policy imposing extra-statutory eligibility criteria on military naturalization applications, including minimum period of service and physical requirements.  Additionally, Plaintiff claims that USCIS delayed processing naturalization applications to wait and see if an applicant becomes disqualified.  Such a scheme would run afoul with the Uniform Rule of Naturalization.  *See Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 273 (D.D.C. 2018) (finding claim under

the Uniform Rule of Naturalization survived a motion to dismiss where the plaintiffs alleged a DoD policy required service members meet extra-statutory criteria to receive a Form N-426 honorable service certification).    Accordingly, the Court **DENIES** Defendants' Motion as to this claim.

### B.    *Due Process*

Next, Defendants argue that Plaintiff's due process claim fails because there are no arbitrary, unlawful, or unauthorized conditions set by USCIS, and therefore Defendants' actions did not infringe on Plaintiff's right to due process.  Mot. at 25.  Plaintiff claims the military must provide due process to servicemembers in advance of issuing anything less than an honorable discharge.  Compl. ¶ 72.  Based on a separate military statute, military regulations, military handbooks, and military practice, Plaintiff claims that the Army treats an "uncharacterized" discharge as a discharge "under honorable conditions."  *Id.* ¶¶ 8, 72, 170.  Plaintiff argues that the Policy violated her due process rights because it treats her "uncharacterized" discharge as a less than honorable discharge, for which Plaintiff did not receive an opportunity to be heard before separation.  *See* Opp'n at 18, 34.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of [procedural] due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Procedural Due Process claims "hinge[] on proof of two elements: (1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections."  *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998).

The threshold inquiry is whether Plaintiff alleges she was deprived of an interest in property or liberty.  *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *see also Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir. 1980) (holding that a protected interest must be

"created and defined by an independent source, such as state or federal law"). The Ninth Circuit has held that naturalization applicants have a property interest in seeing their applications adjudicated lawfully. *Brown v. Holder*, 763 F.3d 1141, 1147 (9th Cir. 2014). Plaintiff had a right to apply for citizenship, established by federal law, specifically § 1440. *Bd. of Regents of State Colls.*, 408 U.S. at 577. Therefore, Plaintiff has adequately alleged a property interest.

The next question is whether Plaintiff has alleged Defendants violated this interest. Plaintiff alleges that USCIS acted unconstitutionally in hindering MAVNI applicants from applying for U.S. citizenship. The Court has already determined that Plaintiff plausibly alleged she complied with the statutory requirements for naturalization pursuant to § 1440 and that the application of USCIS's extra-statutory requirements deprived Plaintiff of her right to citizenship. *See* Compl. ¶ 72. Therefore, Plaintiff has stated a plausible claim that Defendants violated her substantive due process rights when Defendants treated her "uncharacterized" discharge as a discharge under less than honorable conditions. *See Brown*, 763 F.3d at 1149 (stating an agency's failure to follow its own regulations is not per se a violation of due process, but that constitutional rights are implicated "when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights." (quoting *Bates v. Sponberg*, 547 F.2d 325, 330 (6th Cir. 1976)). Therefore, the Court **DENIES** Defendants' Motion as to this claim.

## V.    Declaratory Judgment

In Count V, Plaintiff seeks a declaratory judgment that "uncharacterized" discharges satisfy the "under honorable conditions" discharge eligibility requirement under § 1440. Compl. ¶ 216. Defendants argue that Count V is barred by issue preclusion and fails alongside Plaintiff's substantive claims. Mot. at 19–21, 25. As the Court has already addressed Defendants' issue preclusion argument, *see supra* Section II.A, the Court will only examine whether Plaintiff has stated a claim under the Declaratory Judgment Act.

The Declaratory Judgement Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal

1   relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "[T]he

2   availability of [declaratory relief] presupposes the existence of a judicially remediable

3   right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). "The decision to grant declaratory

4   relief is a matter of discretion." *United States v. State of Wash.*, 759 F.2d 1353, 1356 (9th

5   Cir. 1985) (citations omitted). Many courts in the Ninth Circuit have found that "a claim

6   for declaratory relief is unnecessary where an adequate remedy exists under some other

7   cause of action." *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal.

8   2009); *see also Bell v. Wells Fargo Bank, N.A.*, No. CV144316JFWMRWX, 2014 WL

9   12603123, at *8 (C.D. Cal. Sept. 2, 2014) (dismissing declaratory relief claim as

10  duplicative), *aff'd*, 663 F. App'x 549 (9th Cir. 2016).

11          Plaintiff's claim for declaratory relief is cumulative and duplicative of Plaintiff's

12  other sought avenues of relief. It is unclear what additional declaration of rights would

13  occur under this claim as opposed to Plaintiff's claims that Defendants' Policy violates the

14  APA, the Constitution's Uniform Rule of Naturalization clause, and the Fifth Amendment

15  Due Process Clause. As such, the Court exercises its discretion and declines to consider

16  this claim. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss as to Count V

17  and **DISMISSES** Plaintiff's claim under the Declaratory Judgment Act.

18  **VI.   Injunctive Relief**

19          In Count VI of the Complaint, Plaintiff asserts a claim for a permanent injunction.

20  Defendants argue that injunctive relief is a remedy, not an independent cause of action.

21  Mot. at 25. Plaintiff does not meaningfully oppose Defendants' argument as to this claim,

22  instead arguing that Defendants' contentions are "cursory" and "all premised on the

23  assertion that Defendants' denial of Ms. Miriyeva's naturalization application and its

24  unpublished Policy are fully in accordance with applicable law." Opp'n at 34.

25          It is a well-settled rule in the Ninth Circuit that a claim for "injunctive relief"

26  standing alone is not a cause of action. *See, e.g.*, *Jensen v. Quality Loan Serv. Corp.*, 702

27  F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not

28  state a cause of action."); *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038,

1051 (E.D. Cal. 2010) ("Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (citation omitted)); *Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1136 (N.D. Cal. 2009) (same).

As Count VI asserts an independent claim for injunctive relief, that claim must be dismissed.  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Count VI and **DISMISSES** Plaintiff's claim for injunctive relief.  Plaintiff's request for injunctive relief as a remedy, however, remains viable provided that Plaintiff is successful on the merits of one or more of her remaining claims.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.  Specifically, the Court **DENIES** Defendants' Motion as to Counts I, II, III, and IV of Plaintiff's Complaint, and the Court **GRANTS** Defendants' Motion as to Counts V and VI of Plaintiff's Complaint.  Counts V and VI are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff **MAY FILE** an amended complaint within <u>thirty (30) days</u> of the electronic docketing of this Order.  If Plaintiff fails to file an amended complaint within the allotted time, this case will proceed on Plaintiff's remaining claims.

**IT IS SO ORDERED.**

Dated:  March 21, 2022

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge